**FRANKE et al. v. WILTSCHEK et al.**

United States District Court
S. D. New York.
April 13, 1953.

Eyre, Mann & Burrows, New York City (William D. Burrows, William D. Lucas, New York City, of counsel), for plaintiffs.

Robinson & Thebner, New York City (Emanuel Thebner, New York City, of counsel), for defendants.

CLANCY, District Judge.

Findings of Fact.

1. Plaintiffs, from 1943 to 1951, manufactured a compressed cotton batting for Schiaparelli which, after compression, was in the form of a tablet and when immersed in water became a cotton bath sponge. The equipment for making this product was purchased by them from one Stueffele who had been making this product for Schiaparelli since 1938.

2. Early in 1951 plaintiff, August L. Franke, experimented with and produced a perfumed face cloth compressed into a small drum shape which when immersed in water opens up to its original shape as a face cloth. In order to make this product he made certain mechanical changes in the hydraulic press he had purchased from Stueffele.

3. The product was put on the market under the name, Quettes, in October, 1951, and sales multiplied rapidly thereafter.

4. In December, 1951, defendant Wiltschek telephoned Mrs. Franke stating that he had seen the product at the store of Lewis & Conger in New York and that he and his partner, defendant Blatt, were interested in representing her in selling the item. Wiltschek was informed that Mr. Franke was ill and they were not interested in being represented. Wiltschek nevertheless persisted and after several more calls from him it was agreed that an interview would be arranged. Shortly before Christmas, 1951, Wiltsheck and Blatt appeared at plaintiffs' place of business in Plainfield, New Jersey. After some discussion in the front part of the office concerning Wiltschek's and Blatt's representing the plaintiffs and the capacity of plaintiffs'

manufacture in quantity, Mrs. Franke took them to the rear of the office behind a partition where the product was being manufactured and she explained the process to them. Her disclosure of the process and the firm's capacity was solicited by Wiltschek and Blatt and was made to help them in effecting sales and to assure them of the capacity of the compressing machine and the availability of space for additional machines should the market become great enough. Revelation of the manufacturing process was a revelation of its cost as well. Mrs. Franke then conducted them to her home where they met Mr. Franke and the discussions were resumed. Wiltschek and Blatt represented that as owners of Jo Lane Sales Co. they had a sales force of thirteen men. In fact they had none but themselves. They requested some evidence of the salability of the product and were shown various account cards. This was a revelation of the attractiveness of the Quettes in the retail market. They expressed the opinion that the price was too high. Mr. Franke explained how the glaze was put on Quettes and by what method they were perfumed. During their next visit at the Frankes' home shortly after Christmas of 1951, Wiltschek and Blatt agreed to represent plaintiffs and to try the product's appeal with their clientele. They were given samples, displays and signs. It was agreed that they would receive compensation in the amount of ten percent which was subject to change after their sales trip.

5. By letter dated January 22, 1952 defendant Blatt informed plaintiffs that up to that time he had had no success in obtaining orders. Around February 9, 1952 plaintiffs received back part of the sales equipment that had been given to Wiltschek and Blatt and by letter dated February 15, 1952 they were informed by Wiltschek that Quettes could not be sold through the outlets he could contact. There is considerable doubt whether Blatt and Wiltschek ever honestly intended to sell plaintiff's article but it is found as a fact that assuming they

ever did it was resolved by both during January, 1952, that they would copy plaintiff's manufacture and market the product for their own profit. Neither ever made any effort in good faith to sell Quettes.

6. In March of 1952 at a board of directors meeting at Betti Pearson, Inc. of which Wiltschek and Blatt were directors and vice presidents and their wives owners of half the issued stock, it was decided that this Massachusetts corporation, which had been incorporated in the latter part of 1951, would manufacture and sell compressed wash cloths like Quettes after Blatt had demonstrated with a sample Quette he had retained and had explained the process which had been disclosed to him by the Frankes. The punch press used for compression was owned by The Lady Cornell Co., located in the same building as Betti Pearson, Inc. and the same person was president of both. The first lot of this product was put on the market in April, 1952 under the name Facelettes at a lower price than that at which Quettes were being offered.

■ 7. Defendants Blatt and Wiltschek were guilty of unfair competition. Defendant Betti Pearson, Inc. which manufactured the Facelettes with full knowledge of their betrayal of the Frankes and the secrets confided to them by the Frankes, knowingly adopting and using that information for its own profit and to serve and further the wrongful purpose of Blatt and Wiltschek, is equally liable for the same unfair competition.

### Conclusion of Law.

1. Plaintiffs are entitled to judgment providing an injunction against future manufacture and sale of its product by defendants and an accounting of their profits which are awarded plaintiffs as damages.

■■ A confidential relationship existed between plaintiffs and defendants, Wiltschek and Blatt, from the beginning of their negotiations. Disclosure was made by plaintiffs in reliance upon this relationship. The only remaining element necessary for relief is the existence of a trade secret. "In a suit to enjoin the use or publication of a process or formula which plaintiffs claimed as a secret communicated in confidence, the important question of fact at issue is not whether the process or formula is new or patentable or whether it could have been discovered by the defendant by fair means. 'The basic question involved is: Were plaintiff and defendant dealing at arms' length, or were their negotiations of such character as to put defendant in such position that in equity and good faith it was bound to respect the information given it by plaintiff and not to use the same for its own benefit and against plaintiff's interest.'" Nims, Unfair Competition and Trade-marks. Vol. I, § 143a, citing Allen-Qualley v. Shellmar Products, D.C., 31 F.2d 293. By obtaining the information in such a manner defendants have burdened their use thereof. They have disabled themselves from a use for their own benefit by their engagement in unfair practice. E. I. Dupont de Nemours Powder Co. v. Masland, 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016. A trade secret is protected not because it is unknowable to others but because he who holds the secret is entitled to profit by it without unfair interference from his competitors developed through confidential relationships. Restatement of the Law of Torts, §§ 757 and 759.

It is one thing to be cognizant of the general nature of a process but quite another to become familiar with the details. An examination of the end product here discloses that the general process of its manufacture is compression. Of this defendants were aware but how the compression was effected and its cost they did not know and could not discover or calculate. Having found it out by attaching themselves to plaintiffs they used the information for themselves and to promote their own interests as competitors. The law will redress such a wrong. Schreyer v. Casco Products Corp., D.C., 97 F.Supp. 159, at page 167.

An injunction will issue to prevent defendants from making future use of the information they unfairly obtained. Accordingly defendants are enjoined from making and selling full-sized face cloths compressed and sold as hard perfumed cylinders and an accounting of their profits is ordered to recompense plaintiffs for its past use.